IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| RACHEL CLARK, <br> CHRISTOPHER GARRETSON, <br> AMANDA SHARP BURKHOLDER, <br> NICOLE HALLER NAVA, <br> BRANDI O'HARA, <br> ASHLEY FENTON PRICE, and <br> CHARLA BEAUMONT VIENS, <br> INDIVIDUALLY AND AS NEXT <br> FRIEND OF H.B., A MINOR <br><br> PLAINTIFFS <br><br> vs. <br><br> KURT KNICKREHM, <br> RICHARD WEISS, <br> DEBBIE WILLIAMS, <br> DICK PICKARTS, <br> NIKKOLE HURST, <br> CAROL GILLIS, <br> PATSY CHASE, <br> ROBBIE MCKAY, and <br> LISA GARRETSON <br><br> DEFENDANTS | § § § § § § § § § § § § § § § § § § § § § § § § § § <br><br> Cause No. 17-2091 |

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
JUN 05 2017
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

**PLAINTIFFS' ORIGINAL COMPLAINT**

1. COME NOW, Plaintiffs, RACHEL CLARK, CHRISTOPHER GARRETSON, AMANDA SHARP BURKHOLDER, NICOLE HALLER NAVA, BRANDI O'HARA, ASHLEY FENTON PRICE and CHARLA BEAUMONT VIENS, Individually and as Next Friend of H.B., a minor, and assert the following causes of actions against Defendants, KURT KNICKREHM, RICHARD WEISS, DEBBIE WILLIAMS, DICK PICKARTS, NIKKOLE HURST, CAROL GILLIS, PATSY

CHASE, ROBBIE MCKAY (collectively, "Arkansas DHS Defendants") and LISA GARRETSON, and would respectfully show this Honorable Court as follows:

## I. PARTIES

2. Plaintiff, RACHEL CLARK, is a natural person domiciled in the State of Colorado.

3. Plaintiff, CHRISTOPHER GARRETSON, is a natural person domiciled in the State of Colorado.

4. Plaintiff, AMANDA SHARP BURKHOLDER, is a natural person domiciled in the State of Arkansas.

5. Plaintiff, NICOLE HALLER NAVA, is a natural person domiciled in the State of Missouri.

6. Plaintiff, ASHLEY FENTON PRICE, is a natural person domiciled in the State of Oklahoma.

7. Plaintiff, CHARLA BEAUMONT VIENS, Individually and as Next Friend of H.B., a minor, is a natural person domiciled in the State of Arkansas.

8. Defendant, KURT KNICKREHM, is a natural personal domiciled in Arkansas and may be served with process at his principal residence, 17 Vantage Point, Little Rock, Arkansas 72207.

9. Defendant, RICHARD WEISS, is a natural personal domiciled in Arkansas and may be served with process at his principal residence, 14305 Saint Michael Drive, Little Rock, Arkansas 72211.

10. Defendant, DEBBIE WILLIAMS, is a natural personal domiciled in Arkansas and may be served with process at her principal residence, 7807 Bartsch Avenue, Fort Smith, Arkansas 72903.

11. Defendant, DICK PICKARTS, is a natural personal domiciled in Arkansas and may be served with process at his principal place of business, Logan County, Arkansas Department of Human Services, 17 West McKeen Street, Paris, Arkansas 72855.

12. Defendant, NIKKOLE HURST, is a natural personal domiciled in Arkansas and may be served with process at her principal residence, 2901 W. Main Street, Ozark, Arkansas 72949 or at her principal place of business, Ozark Public Schools, 1609 Walden Drive, Ozark, Arkansas 72949.

13. Defendant, CAROL GILLIS, is a natural personal domiciled in Arkansas and may be served with process at her principal place of business, Logan County, Arkansas Department of Human Services, 17 West McKeen Street, Paris, Arkansas 72855.

14. Defendant, PATSY CHASE, is a natural personal domiciled in Arkansas and may be served with process at her principal residence, 393 N. Center Avenue, Booneville, Arkansas 72927.

15. Defendant, ROBBIE MCKAY, is a natural personal domiciled in Arkansas and may be served with process at her principal place of business, Sebastian County, Arkansas Department of Human Services, 616 Garrison Avenue, Ft. Smith, Arkansas 72901.

16. Defendant, LISA GARRETSON, is a natural personal domiciled in Arkansas and may be served with process at her principal residence, 1214 Mays Branch Road, Van Buren, Arkansas 72956.

## II. JURISDICTION

17. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this lawsuit contains claims that arise under the laws of the United States. Specifically, Plaintiffs assert causes of action based upon 42 U.S.C. § 1983 and 18 U.S.C. § 2255. Additionally, this Court has jurisdiction pursuant to 28 U.S.C. § 1367 for claims that are related to the federal claim.

## III. VENUE

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Arkansas.

## IV. FACTS

19. In or around May 1998, the Arkansas Department of Human Services ("Arkansas DHS") approved Clarence "Charlie" Garretson and his wife, Defendant LISA GARRETSON, to be foster parents despite the fact that, one year prior to the approval, Arkansas DHS had substantiated a report that Charlie had sexually assaulted two children at knifepoint.

20. For several years following the approval, the Garretson home operated as a den of sexual depravity, with the Arkansas DHS Defendants serving up a seemingly endless supply of victims and Charlie sexually assaulting child after child. At least eighteen of the thirty-five children placed in the Garretson home were sexually abused by Charlie Garretson.

21. Between 1998 and 2004, the Arkansas DHS Defendants received several victim complaints about Charlie's sexual abuse in the home. Despite these complaints, the

Arkansas DHS Defendants failed to remove any of the children from the Garretson home. Instead, the victims were forced to stay in the custody of their abuser.

22. Charlie was employed as a long haul truck driver. Not only did he assault his victims in and around his home, he also assaulted them in the family vehicles, as well as the 18-wheeler he used for his employment. Charlie frequently took his victims with him on his trucking routes, so that he could satisfy his carnal urges even when he was away from home.

23. In or around July 1998, Defendant RICHARD WEISS became Interim Director of the Arkansas DHS.

24. In or around July 1998, the Arkansas DHS placed Plaintiff AMANDA SHARP BURKHOLDER in the Garretson home. At the time of her placement, Plaintiff AMANDA SHARP BURKHOLDER was 13 years old (a minor) and a ward of the State.

25. Defendant ROBBIE MCKAY served as Plaintiff AMANDA SHARP BURKHOLDER's caseworker.

26. In or around January 1999, Defendant KURT KNICKREHM became Director of the Arkansas DHS.

27. In or around September 1999, the Arkansas DHS placed Plaintiffs CHRISTOPHER GARRETSON and RACHEL CLARK in the Garretson home. At the time of his placement, Plaintiff CHRISTOPHER GARRETSON was 9 years old (a minor) and a ward of the State. At the time of her placement, Plaintiff RACHEL CLARK was 15 years old (a minor) and a ward of the State. At the time of their placement,

Plaintiff CHRISTOPHER GARRETSON was known as Christopher Reichard and Plaintiff RACHEL CLARK was known as Rachel Reichard.

28. In or around January 2000, the Arkansas DHS placed Plaintiff ASHLEY FENTON PRICE in the Garretson home. At the time of her placement, Plaintiff ASHLEY FENTON PRICE was 13 years old (a minor) and a ward of the State.

29. During the winter of 2000, Charlie began to sexually assault Plaintiff ASHLEY FENTON PRICE.

30. The sexual assaults of Plaintiff ASHLEY FENTON PRICE lasted for two months.

31. In or about January 2000, the Arkansas DHS placed Plaintiff BRANDI O'HARA in the Garretson home. At the time of her placement, Plaintiff BRANDI O'HARA was 13 years old (a minor) and a ward of the State.

32. Defendant DEBBIE WILLIAMS served as Plaintiff BRANDI O'HARA's caseworker.

33. Defendant LISA GARRETSON denied Plaintiff BRANDI O'HARA prescription medication.

34. Defendant DEBBIE WILLIAMS obtained actual knowledge that Plaintiff BRANDI O'HARA was denied prescription medication in her foster home. Yet, no action was taken.

35. In or around 2000, the Arkansas DHS placed Plaintiff CHARLA BEAUMONT VIENS in the Garretson home. At the time of her placement, Plaintiff CHARLA BEAUMONT VIENS was 13 years old (a minor) and a ward of the State.

36. Defendant ROBBIE MCKAY served as Plaintiff CHARLA BEAUMONT VIENS's caseworker.

37. In or around 2000, the Arkansas DHS placed Plaintiff NICOLE HALLER NAVA in the Garretson home. At the time of her placement, Plaintiff NICOLE HALLER NAVA was 11 years old (a minor) and a ward of the State.

38. Defendant NIKKOLE HURST served as Plaintiff NICOLE HALLER NAVA's caseworker, and Defendant DICK PICKARTS served as the director of the Arkansas DHS in Logan County and as Defendant NIKKOLE HURST's supervisor. Defendants CAROL GILLIS and PATSY CHASE also served as Plaintiff NICOLE HALLER NAVA's caseworkers.

39. Shortly thereafter, Charlie began to sexually assault Plaintiff NICOLE HALLER NAVA.

40. Defendants NIKKOLE HURST, DICK PICKARTS, CAROL GILLIS and PATSY CHASE obtained actual knowledge that Plaintiff NICOLE HALLER NAVA was being sexually assaulted by Charlie Garretson in her foster home. Yet, no action was taken. No report was made to the authorities or the child abuse hotline, and the foster children, including a known sexual abuse victim, were left in the Garretson home.

41. The sexual assault of Plaintiff NICOLE HALLER NAVA continued until 2002.

42. During the summer of 2000, Charlie began to sexually assault Plaintiff BRANDI O'HARA.

43. Defendant DEBBIE WILLIAMS obtained actual knowledge that Plaintiff BRANDI O'HARA was being sexually assaulted by Charlie Garretson in her foster home. Yet, no action was taken. No report was made to the authorities or the child abuse

hotline, and the foster children, including a known sexual abuse victim, were left in the Garretson home.

44. The sexual assaults of Plaintiff BRANDI O'HARA occurred on a bi-weekly basis for a period of five years.

45. During the summer of 2000, Charlie began to sexually assault Plaintiff CHRISTOPHER GARRETSON.

46. In or around October 2000, Charlie and Defendant LISA GARRETSON adopted Plaintiff CHRISTOPHER GARRETSON.

47. The sexual assaults of Plaintiff CHRISTOPHER GARRETSON continued until the summer of 2003.

48. In or around 2000, Charlie sexually assaulted Plaintiff AMANDA SHARP BURKHOLDER.

49. The sexual assaults of Plaintiff AMANDA SHARP BURKHOLDER continued until September 2002.

50. In addition to being sexually assaulted, Plaintiff AMANDA SHARP BURKHOLDER also was physically abused in the Garretson home.

51. Defendant ROBBIE MCKAY obtained actual knowledge that Plaintiff AMANDA SHARP BURKHOLDER was physically abused in her foster home. Yet, no action was taken. No report was made to the authorities or the child abuse hotline, and the foster children, including a known physical abuse victim, were left in the Garretson home.

52. In or around 2001, Charlie sexually assaulted Plaintiff RACHEL CLARK.

53. Charlie and Defendant LISA GARRETSON allowed non-foster children to stay in their home as well. In or around late 2002, a relative of the Garretsons, Chris Jones, impregnated Plaintiff CHARLA BEAUMONT VIENS in the Garretson home. At the time of the impregnation, Plaintiff CHARLA BEAUMONT VIENS was a minor foster child in the custody of the Arkansas DHS. Plaintiff CHARLA BEAUMONT VIENS gave birth to H.B., a minor, in September 2003.

54. In October 2003, Defendant LISA GARRETSON insisted that Plaintiff CHARLA BEAUMONT VIENS travel with Charlie during a road trip. On this road trip, Charlie sexually assaulted Plaintiff CHARLA BEAUMONT VIENS.

55. The sexual assaults of Plaintiff CHARLA BEAUMONT VIENS continued until 2004.

56. In 2004, the Arkansas DHS finally revoked the foster status of the Garretsons. However, Charlie's reign of sexual terror continued.

57. In or around July 2014, Charlie took H.B., the 10-year-old daughter of his former foster child and victim, Plaintiff CHARLA BEAUMONT VIENS, on a road trip. During the road trip, Charlie raped H.B. repeatedly.

58. In or around May 2016, H.B., then 12 years old, reported her abuse to the authorities.

59. In or around June 2016, Charlie was arrested.

60. In or around October 2016, Charlie pled guilty to multiple counts of interstate transportation of minors with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423.

61. On May 31, 2017 Charlie was sentenced to life in prison for his crimes.

62. Following Charlie's arrest and guilty plea, Plaintiffs began to understand the inappropriate nature of their relations with Charlie. Further, following Charlie's arrest and guilty plea, Plaintiffs discovered their injuries and the effects of their abuse. Therefore, Plaintiffs' action is timely pursuant to ARK. CODE. ANN. § 16-56-130.

## V.   CAUSES OF ACTION

COUNT 1: 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS

63. Plaintiffs adopt and incorporate by reference each and every allegation set forth above.

64. Whether by involuntary removal or voluntary surrender, children come into the Arkansas DHS's foster care system to be protected from harm.

65. While in the foster care system, foster children remain in the custody of the Arkansas DHS.

66. Given this special relationship, the Arkansas DHS Defendants have the fundamental duty to ensure that each foster child is in an appropriate placement and confirm that each foster child in the Arkansas DHS's care is safe and healthy.

67. At all times relevant hereto, it was clearly established that Plaintiffs had fundamental rights to physical safety and to be free from the infliction of unnecessary pain.

68. Furthermore, at all times relevant hereto, it was clearly established that children in the custody of the Arkansas DHS, including Plaintiffs, had a right to be safe and

free from unreasonable risks of harm and a right not to be handed over by state officers to a foster parent whom is known or suspected to be a child abuser.

69. The above-mentioned rights are guaranteed to Plaintiffs under the Fifth and/or Fourteenth Amendments to the United States Constitution.

70. On a systemic scale, however, Defendants exhibited a pervasive pattern of indifference to Plaintiffs' and their substantive due process rights.

71. Defendants, acting under the color of state law as a foster parent, foster care worker and/or employee of the Arkansas DHS, violated Plaintiffs' substantive due process rights by *inter alia*:

   a. Approving Charlie to be a foster parent despite actual knowledge of his history of sexual assault upon children;

   b. Failing to conduct a proper background check of the Garretsons prior to placing Plaintiffs in their care;

   c. Failing to thoroughly investigate the fitness of the foster home;

   d. Failing to maintain proper supervision of the foster home;

   e. Deliberately ignoring repeated warnings and signs of abuse;

   f. Failing to promptly investigate allegations of abuse; and

   g. Failing to promptly remove Plaintiffs from the Garretson home after actual notice that Plaintiffs were being sexually and/or physically abused.

72. Defendants had notice of a pattern of violations of Plaintiffs' constitutional rights and/or of behavior that threatened a violation of Plaintiffs' constitutional rights. Despite this notice, Defendants were deliberately indifferent to and/or tacitly authorized the unconstitutional acts.

73. Defendants displayed a pattern of omissions revealing deliberate indifference to specific duties imposed for the purpose of safeguarding Plaintiffs from abuse. Indeed, as discussed *infra*, Defendants' actions demonstrate a failure to comply with specific laws and policies designed to protect children, including Plaintiffs.

74. Furthermore, at all times relevant hereto, Defendants knew that their practices and policies created a substantial risk of harm to children in the care of Arkansas DHS and deliberately failed to choose reasonable alternatives to those practices and policies in deliberate disregard of Plaintiffs' constitutional rights.

75. Defendants, through their conscious disregard to the rights of Plaintiffs and their deliberate indifference to a known risk, created the danger to which Plaintiffs were exposed. To wit, Defendants handed Plaintiffs over to a known sexual predator – a behavior that shocks the conscious.

76. Defendants, through their unconstitutional practices, deliberate indifference and repeated acts of gross negligence, facilitated Charlie's ability to foster and/or adopt Plaintiffs – thereby facilitating his access to his victims.

77. Defendants, through their unconstitutional practices, deliberate indifference and repeated acts of gross negligence, were a substantial factor in causing Plaintiffs' injuries and damages.

78. Plaintiffs would not have been placed in Charlie's care, have been permitted to remain in Charlie's care, and/or have been adopted by Charlie but for Defendants' deliberate indifference to their constitutional rights.

## COUNT 2: 18 U.S.C. § 2255 AGAINST ALL DEFENDANTS

79. Plaintiffs adopt and incorporate by reference each and every allegation set forth above.

80. Given his profession as a truck driver, Charlie frequently transported Plaintiffs with him across state lines to engage in sexual activity with them.

81. Charlie knowingly enticed Plaintiffs, while minors, to travel interstate to engage in sexual activity with him. Therefore, Charlie violated 18 U.S.C. § 2422.

82. Charlie knowingly transported Plaintiffs, while minors, interstate to engage in sexual activity with him. Therefore, Charlie violated 18 U.S.C. § 2423.

83. Defendants knew of these offenses. Indeed, Defendants acted to facilitate these offenses by:

    a. Approving a known child predator to be a foster parent; and

    b. Allowing foster children to remain in Charlie's care despite actual knowledge of sexual abuse.

By so facilitating, aiding and/or abetting these offenses, Defendants are liable as principals under 18 U.S.C. § 2.

84. Pursuant to 18 U.S.C. § 2255, Defendants are civilly liable to Plaintiffs for the statutory violations described herein.

## COUNT 3: NEGLIGENCE *PER SE* AGAINST DEFENDANTS WILLIAMS, PICKARTS, HURST, GILLIS, CHASE, MCKAY AND GARRETSON

85. Plaintiffs adopt and incorporate by reference each and every allegation set forth above.

86. Arkansas law requires that any foster parent, foster care worker, or employee of the Arkansas DHS "immediately notify the Child Abuse Hotline if he or she has reasonable cause to suspect that a child has been subjected to child maltreatment." ARK. CODE. ANN. § 12-18-402.

87. Defendant DEBBIE WILLIAMS had reasonable cause to suspect that Charlie was sexually abusing children, including Plaintiff BRANDI O'HARA. Defendant DEBBIE WILLIAMS had a duty to report such abuse. Nonetheless, Defendant DEBBIE WILLIAMS willfully and knowingly failed to report such abuse and, therefore violated this statute. This failure caused Plaintiffs to suffer injury and damages by being or continuing to be sexually abused. Plaintiffs are of the type of victim the statute sought to protect, and Plaintiffs' injuries are of the type of injury the statute sought to prevent. Therefore, Defendant DEBBIE WILLIAMS was negligent *per se* in failing to report the abuse.

88. Defendant DICK PICKARTS had reasonable cause to suspect that Charlie was sexually abusing children, including Plaintiff NICOLE HALLER NAVA. Defendant DICK PICKARTS had a duty to report such abuse. Nonetheless, Defendant DICK PICKARTS willfully and knowingly failed to report such abuse and, therefore violated this statute. This failure caused Plaintiffs to suffer injury and damages by being or continuing to be sexually abused. Plaintiffs are of the type of victim the statute sought to protect, and Plaintiffs' injuries are of the type of injury the statute sought to prevent. Therefore, Defendant DICK PICKARTS was negligent *per se* in failing to report the abuse.

89. Defendant NIKKOLE HURST had reasonable cause to suspect that Charlie was sexually abusing children, including Plaintiff NICOLE HALLER NAVA. Defendant NIKKOLE HURST had a duty to report such abuse. Nonetheless, Defendant NIKKOLE HURST willfully and knowingly failed to report such abuse and, therefore violated this statute. This failure caused Plaintiffs to suffer injury and damages by being or continuing to be sexually abused. Plaintiffs are of the type of victim the statute sought to protect, and Plaintiffs' injuries are of the type of injury the statute sought to prevent. Therefore, Defendant NIKKOLE HURST was negligent *per se* in failing to report the abuse.

90. Defendant CAROL GILLIS had reasonable cause to suspect that Charlie was sexually abusing children, including Plaintiff NICOLE HALLER NAVA. Defendant CAROL GILLIS had a duty to report such abuse. Nonetheless, Defendant CAROL GILLIS willfully and knowingly failed to report such abuse and, therefore violated this statute. This failure caused Plaintiffs to suffer injury and damages by being or continuing to be sexually abused. Plaintiffs are of the type of victim the statute sought to protect, and Plaintiffs' injuries are of the type of injury the statute sought to prevent. Therefore, Defendant CAROL GILLIS was negligent *per se* in failing to report the abuse.

91. Defendant PATSY CHASE had reasonable cause to suspect that Charlie was sexually abusing children, including Plaintiff NICOLE HALLER NAVA. Defendant PATSY CHASE had a duty to report such abuse. Nonetheless, Defendant PATSY CHASE willfully and knowingly failed to report such abuse and, therefore violated this statute. This failure caused Plaintiffs to suffer injury

and damages by being or continuing to be sexually abused. Plaintiffs are of the type of victim the statute sought to protect, and Plaintiffs' injuries are of the type of injury the statute sought to prevent. Therefore, Defendant PATSY CHASE was negligent *per se* in failing to report the abuse.

92. Defendant ROBBIE MCKAY had reasonable cause to suspect that Charlie was physically and/or sexually abusing children, including Plaintiff AMANDA SHARP BURKHOLDER. Defendant ROBBIE MCKAY had a duty to report such abuse. Nonetheless, Defendant ROBBIE MCKAY willfully and knowingly failed to report such abuse and, therefore violated this statute. This failure caused Plaintiffs to suffer injury and damages by being or continuing to be physically and/or sexually abused. Plaintiffs are of the type of victim the statute sought to protect, and Plaintiffs' injuries are of the type of injury the statute sought to prevent. Therefore, Defendant ROBBIE MCKAY was negligent *per se* in failing to report the abuse.

93. Defendant LISA GARRETSON had reasonable cause to suspect that Charlie was sexually abusing children, including Plaintiffs. Defendant LISA GARRETSON had a duty to report such abuse. Nonetheless, Defendant LISA GARRETSON willfully and knowingly failed to report such abuse and, therefore violated this statute. This failure caused Plaintiffs to suffer injury and damages by being or continuing to be sexually abused. Plaintiffs are of the type of victim the statute sought to protect, and Plaintiffs' injuries are of the type of injury the statute sought to prevent. Therefore, Defendant LISA GARRETSON was negligent *per se* in failing to report the abuse.

## COUNT 4: NEGLIGENCE AGAINST DEFENDANT LISA GARRETSON

94. Plaintiffs adopt and incorporate by reference each and every allegation set forth above.

95. Defendant LISA GARRETSON committed negligence by failing to act as a reasonable and prudent person would have under the same or similar circumstances. Specifically, Defendant LISA GARRETSON committed negligence by:

    a. Failing to protect Plaintiffs from sexual and/or physical abuse;
    b. Allowing Charlie to use her home and vehicles to sexually and/or physically abuse Plaintiffs;
    c. Failing to warn Plaintiffs of Charlie's inappropriate behavior toward minor children;
    d. Failing to report suspected abuse by Charlie in breach of common law and statutory duties, and
    e. Committing other acts of negligence with Plaintiffs shall further describe after an adequate time for discovery.

96. Defendant LISA GARRETSON's negligence as described in the preceding Paragraph proximately caused Plaintiffs to suffer injury and damages.

## VI.   **DAMAGES**

97. Plaintiffs adopt and incorporate by reference each and every allegation set forth above.

98. As a direct and proximate result of Defendants' wrongful actions, Plaintiffs have suffered bodily injury, severe mental anguish, including physical manifestations of

mental anguish, humiliation, embarrassment, and confusion. These injuries have in the past and will in the future interfere with Plaintiffs' daily lives, reputation and ability to earn enjoy live and otherwise carry out their day-to-day responsibilities. Plaintiffs, therefore, claim the following specific items of damage to date:

   a. Reasonable and necessary medical expenses incurred in the past;
   b. Reasonable and necessary medical expenses reasonably likely to be incurred in the future;
   c. Past physical pain and suffering;
   d. Mental anguish in the past;
   e. Mental anguish in the future;
   f. Minimum statutory damages pursuant to 18 U.S.C. § 2255(a);
   g. Costs, including attorneys' fees and expert witness fees as allowed by 42 U.S.C. § 1988;
   h. Pre-judgment interest at the highest rate allowed by law; and
   i. Post-judgment interest at the highest rate allowed by law.

## VII. EXEMPLARY AND PUNITIVE DAMAGES

99. Plaintiffs adopt and incorporate by reference each and every allegation set forth above.

100. Defendants' conduct in condemning children to life with a known violent sexual predator involved a reckless and callous indifference to the federally protected rights of Plaintiffs.

101. In light of the surrounding circumstances, each Defendant knew or should have known that his or her conduct would naturally and probably result in injury or damage. Yet, despite such knowledge, each Defendant proceeded with reckless disregard of the consequence to Plaintiffs.

102. Therefore, Plaintiffs seek exemplary and punitive damages under the causes of action asserted herein.

## VIII.  JURY DEMAND

103. Plaintiffs hereby demand a trial by jury.

## IX.  PRAYER

104. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, as the law directs, and that upon final hearing thereof, Plaintiffs have and recover judgment over and from Defendant in such amounts as the evidence may show proper at the time of trial, together with pre-judgment and post-judgment interest thereon at the maximum legal rate allowed by law, cost of Court, and for such other and further relief, both general and special, at law or in equity, to which Plaintiffs may show themselves justly entitled. Plaintiffs specifically pray for exemplary damages against Defendants as allowed by applicable law and as established by the evidence presented at trial.

June 2, 2017                                       Respectfully submitted,

*W. David Carter* (signature)

W. David Carter, Arkansas Bar No. 85025
MERCY ✶ CARTER, L.L.P.
1724 Galleria Oaks Drive
Texarkana, Texas 75503
(903) 794-9419 - Telephone
(903) 794-1268 - Facsimile
wdcarter@texarkanalawyers.com


D. Neil Smith, Texas Bar No. 00797450
Ben King, Arkansas Bar No. 2005260
Amy Miller, Texas Bar No. 24053133
NIX, PATTERSON & ROACH, LLP
1845 Woodall Rogers Freeway, Suite 1050
Dallas, Texas 75201
(972) 831-1188 - Telephone
(972) 444-0716 - Facsimile
dneilsmith@me.com
benking@nixlaw.com
amymiller@nixlawfirm.com


ATTORNEYS FOR PLAINTIFFS