IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| RACHEL CLARK, | § | |
| CHRISTOPHER WAYNE REICHARD, | § | |
| AMANDA SHARP BURKHOLDER, | § | |
| NICOLE HALLER NAVA, | § | |
| BRANDI O'HARA, | § | |
| ASHLEY FENTON PRICE, | § | |
| CHARLA BEAUMONT VIENS, | § | |
| INDIVIDUALLY AND AS NEXT | § | |
| FRIEND OF H.B., A MINOR, and | § | |
| AMBER LEE REICHARD EMMETT, | § | |
|     Plaintiffs | § | |
| | § | |
| vs. | § | Cause No. 2:17-CV-2091-TLB |
| | § | |
| DEBBIE WILLIAMS, | § | |
| RAYMOND PICKARTZ, | § | |
| NIKKOLE HURST, | § | |
| CAROL GEELS, | § | |
| PATSY CHASE, and | § | |
| ROBERTA MCKAY | § | |
|     Defendants | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

1.    Plaintiffs, Rachel Clark, Christopher Wayne Reichard, Amanda Sharp Burkholder, Nicole Haller Nava, Brandi O'Hara, Ashley Fenton Price, Charla Beaumont Viens, Individually and as Next Friend of H.B., a minor, and Amber Lee Reichard Emmett assert the following causes of actions against Defendants, Debbie Williams, Raymond Pickartz, Nikkole Hurst, Carol Geels, Patsy Chase, Roberta McKay (collectively, "Arkansas DHS Defendants"), and would respectfully show this Honorable Court as follows:

### I.    PARTIES

2.    Plaintiff, Rachel Clark, is a natural person domiciled in the State of Colorado.

3.      Plaintiff, Christopher Wayne Reichard, is a natural person domiciled in the State of Colorado.

4.      Plaintiff, Amanda Sharp Burkholder, is a natural person domiciled in the State of Arkansas.

5.      Plaintiff, Nicole Haller Nava, is a natural person domiciled in the State of Missouri.

6.      Plaintiff, Ashley Fenton Price, is a natural person domiciled in the State of Oklahoma.

7.      Plaintiff, Charla Beaumont Viens, Individually and as Next Friend of H.B., a minor, is a natural person domiciled in the State of Arkansas.

8.      Plaintiff, Amber Lee Reichard Emmett, is a natural person domiciled in the state of Missouri.

9.      Plaintiff, Brandi O'Hara, is a natural person domiciled in the State of Arkansas.

10.     Defendant, Debbie Williams, is a natural personal domiciled in Arkansas and may be served with process through her attorney of record, Jennifer Merritt, Arkansas Attorney General's Office, 323 Center Street, Suite 200, Little Rock, Arkansas 72201. Defendant Williams is being sued in her individual, as opposed to official, capacity.

11.     Defendant, Raymond Pickartz is a natural personal domiciled in Arkansas and may be served with process at his principal place of business, Logan County, Arkansas Department of Human Services, 17 West McKeen Street, Paris, Arkansas 72855. Defendant Pickartz is being sued in his individual, as opposed to official, capacity.

12.     Defendant, Nikkole Hurst, is a natural personal domiciled in Arkansas and may be served with process through her attorney of record, Jennifer Merritt, Arkansas Attorney

General's Office, 323 Center Street, Suite 200, Little Rock, Arkansas 72201. Defendant Hurst is being sued in her individual, as opposed to official, capacity.

13.     Defendant, Carol Geels, is a natural personal domiciled in Arkansas and may be served with process through her attorney of record, Jennifer Merritt, Arkansas Attorney General's Office, 323 Center Street, Suite 200, Little Rock, Arkansas 72201. Defendant Geels is being sued in her individual, as opposed to official, capacity.

14.     Defendant, Patsy Chase, is a natural personal domiciled in Arkansas and may be served with process at her principal residence, 393 N. Center Avenue, Booneville, Arkansas 72927. Defendant Chase is being sued in her individual, as opposed to official, capacity.

15.     Defendant, Roberta McKay, is a natural personal domiciled in Arkansas and may be served with process through her attorney of record, Jennifer Merritt, Arkansas Attorney General's Office, 323 Center Street, Suite 200, Little Rock, Arkansas 72201. Defendant McKay is being sued in her individual, as opposed to official, capacity.

## II.      <u>JURISDICTION</u>

16.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this lawsuit contains claims that arise under the laws of the United States. Specifically, Plaintiffs assert causes of action based upon 42 U.S.C. § 1983.

## III.      <u>VENUE</u>

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Arkansas.

## IV.   FACTS

18.     In August 1997, the Arkansas Department of Human Services ("Arkansas DHS") received notice that Clarence Garretson ("Garretson") had sexually assaulted two children.

19.     After receiving notice of the 1997 sexual assault, Arkansas DHS investigated the details of the sexual assault.

20.     As part of the investigation, Arkansas DHS recorded Garretson's date of birth and social security number.

21.     As part of the investigation, Arkansas DHS received records from law enforcement describing the graphic and violent details of the sexual abuse.

22.     As part of the investigation, Arkansas DHS received witness statements from the minor victims describing the graphic and violent details of the sexual abuse.

23.     Arkansas DHS determined there was credible evidence that Garretson had committed the sexual assault.  Arkansas DHS issued Child Maltreatment Determination Notifications regarding Garretson and documented the finding in Arkansas DHS files.

24.     Arkansas DHS created a Child Maltreatment Assessment Summary, listing Garretson's sexual abuse of the minors and making a determination that the complaints against him were "true".

25.     Arkansas DHS created a child maltreatment report, and entered the report into a registry, creating and assigning a registration number for the report.

26.     In or around May 1998, Arkansas DHS approved Garretson to be a foster parent.

27.     For several years following his approval to be a foster parent, the Garretson home operated as a den of sexual depravity, with the Arkansas DHS Defendants serving up a

seemingly endless supply of victims and Garretson sexually assaulting child after child. At least eighteen of the thirty-five children placed in the Garretson home were sexually abused by Garretson.[1]

28.    Between 1998 and 2004, the Arkansas DHS Defendants received several victim complaints about Garretson's sexual abuse in the home.  Despite these complaints, the Arkansas DHS Defendants failed to remove any of the children from the Garretson home. Instead, the victims were forced to stay in the custody of their abuser.

29.    Garretson was employed as a long haul truck driver. Not only did he assault his victims in and around his home, he also assaulted them in the family vehicles, as well as the 18-wheeler he used for his employment. Garretson frequently took his victims with him on his trucking routes, so that he could satisfy his carnal urges even when he was away from home.

30.    In July 1998, the Arkansas DHS placed Plaintiff Amanda Sharp Burkholder in the Garretson home.  At the time of her placement, Plaintiff Amanda Sharp Burkholder was a minor and in the custody of DHS.

31.    Defendant Roberta McKay served as Plaintiff Amanda Sharp Burkholder's caseworker from the time of Plaintiff's placement at the Garretson home until Plaintiff reached age 18 and left the DHS system.

32.    Defendant Roberta McKay failed to conduct proper and timely child contact visits with Plaintiff Amanda Sharp Burkholder.

---

[1] Arkansas DHS procedures required that the Garretson's qualifications as foster parents be re-evaluated at least annually, including checks of the Central Child Maltreatment Registry DHS maintained. The identity of the DHS employees responsible for the re-evaluations is unknown to Plaintiffs, as the Garretson foster files have not yet been disclosed.

33.    In or around September 1999, the Arkansas DHS placed Plaintiffs Christopher Wayne Reichard, Amber Lee Reichard Emmett, and Rachel Clark in the Garretson home. At the time of their placements, these Plaintiffs were minors and in the custody of DHS.

34.    Defendant Debbie Williams was a secondary caseworker for Plaintiffs Christopher Wayne Reichard, Amber Lee Reichard Emmett, and Rachel Clark from 2000 until 2001.

35.    Defendant Debbie Williams failed to conduct proper and timely child contact visits with these Plaintiffs.

36.    In October 1999, Defendant Roberta McKay received notice that Garretson was taking an individual minor female out of the house on a multi-state overnight trucking trip in his truck / sleeper cab. Defendant Roberta McKay approved the trip despite prior "true" findings of sexual assault against Garretson. Defendant Roberta McKay took no steps to prevent Garretson from taking the minor on the road alone with him. Defendant McKay also failed to check the Central Registry for prior abuse claims against Garretson for assaulting children.

37.    In or around January 2000, the Arkansas DHS placed Plaintiff Ashley Fenton Price in the Garretson home. At the time of her placement, Plaintiff Ashley Fenton Price was a minor and in the custody of DHS.

38.    In or about January 2000, the Arkansas DHS placed Plaintiff Brandi O'Hara in the Garretson home. At the time of her placement, Plaintiff Brandi O'Hara was a minor and in the custody of DHS.

39.    Defendant Debbie Williams served as Plaintiff Brandi O'Hara's caseworker.

40.    Defendant Debbie Williams failed to conduct proper and timely child contact visits with Plaintiff Brandi O'Hara.

41.    In 2000, Garretson began to sexually assault Plaintiff Amanda Sharp Burkholder.

42.    The sexual assaults of Plaintiff Amanda Sharp Burkholder lasted for two years into 2002.

43.    In addition to being sexually assaulted, Plaintiff Amanda Sharp Burkholder also was physically abused in the Garretson home.

44.    In or around 2000, Garretson began to sexually assault Plaintiff Amber Lee Reichard Emmett.  These sexual assaults occurred in the Garretson home and during road trips across state lines.

45.    The sexual assaults of Amber Lee Reichard Emmett continued until 2004.

46.    During the summer of 2000, Garretson began to sexually assault Plaintiff Brandi O'Hara.

47.    The sexual assaults of Plaintiff Brandi O'Hara occurred on a bi-weekly basis for a period of five years.

48.    During the winter of 2000, Garretson began to sexually assault Plaintiff Ashley Fenton Price.

49.    The sexual assaults of Plaintiff Ashley Fenton Price lasted for two months.  Some of the abuse occurred during an overnight trucking trip with Garretson.

50.    During the summer of 2000, Garretson began to sexually assault Plaintiff Christopher Wayne Reichard.

51.    The sexual assaults of Plaintiff Christopher Wayne Reichard continued until the summer of 2003.

52.     In or around October 2000, the Garretson family adopted Plaintiff Christopher Wayne Reichard.[2]

53.     In or around 2001, Garretson sexually assaulted Plaintiff Rachel Clark.

54.     In 2001 the Arkansas DHS placed Plaintiff Nicole Haller Nava in the Garretson home.  At the time of her placement, Plaintiff Nicole Haller Nava was a minor and in the custody of DHS.

55.     Shortly thereafter, Garretson began to sexually assault Plaintiff Nicole Haller Nava.

56.     The sexual assaults of Plaintiff Nicole Haller Nava continued until 2002.

57.     Defendant Nikkole Hurst served as Plaintiff Nicole Haller Nava's caseworker.  Defendants Carol Geels and Patsy Chase also served as Plaintiff Nicole Haller Nava's caseworkers.  Defendant Raymond Pickartz served as the director of the Arkansas DHS in Logan County and was the supervisor for Defendant Nikkole Hurst, Defendant Carol Geels, and Defendant Patsy Chase.

58.     Defendants Hurst, Geels, Chase, and Pickartz failed to conduct proper and timely child contact visits with Plaintiff.

59.     In April 2002, Plaintiff Nicole Haller Nava reported that she was being physically abused at the Garretson foster home.  Defendant Nikkole Hurst and Defendant Raymond Pickartz received notice of the abuse allegations.  Defendant Nikkole Hurst was assigned as Plaintiff Nicole Haller Nava's caseworker at the time of this complaint.  Defendant Raymond Pickartz instructs Defendant Nikkole Hurst to have minimal contact with Plaintiff Nicole Haller Nava.

---

[2] The adoption of Christopher Wayne Reichard was another event which required DHS to re-evaluate the Garretson's qualifications as foster parents, including a check of the Central Child Maltreatment Registry.

60.    In May 2002, Plaintiff Nicole Haller Nava reports unwanted sexual advances from another foster child in the Garretson home.  Defendant Nikkole Hurst receives notice of the complaint.

61.    During the investigation of the May 2002 complaint, Plaintiff Amber Lee Reichard Emmett reports that she does not feel safe in the Garretson foster home. Defendant Nikkole Hurst receives notice of this report.

62.    Defendants Raymond Pickartz and Carol Geels were assigned as caseworkers for Plaintiff Nicole Haller Nava beginning in the summer of 2002.  For well over a year thereafter Defendants Raymond Pickartz and Carol Geels ignored repeated claims by Plaintiff Nicole Haller Nava that she continued to be abused in the Garretson home. Defendant Raymond Pickartz and Carol Geels failed to make regular contact with Plaintiff Nicole Haller and failed to make Central Registry checks through at least April of 2005. [3]   When Defendant Patsy Chase became Plaintiff Nicole Haller Nava's caseworker, Plaintiff informed her of the sexual abuse, but Defendant Patsy Chase failed to check the Central Registry or take any other steps to protect Plaintiff and other children in the home.  Defendants Nikkole Hurst, Raymond Pickartz, Carol Geels and Patsy Chase obtained actual knowledge that Plaintiff Nicole Haller Nava was being sexually assaulted by Garretson in her foster home. However, no action was taken.  No report was made to the authorities or the child abuse hotline, and the foster children, including a known sexual abuse victim, were left in the Garretson home.

---

[3] Arkansas DHS would subsequently be held in contempt by a Logan County Circuit Judge for essentially "losing" Plaintiff Nicole Haller Nava in the system while in DHS custody.

63.     In May 2002, the Arkansas DHS placed Plaintiff Charla Beaumont Viens in the Garretson home.  At the time of her placement, Plaintiff Charla Beaumont Viens was a minor and in the custody of Arkansas DHS.

64.     Defendant Roberta McKay served as Plaintiff Charla Beaumont Viens' caseworker.

65.     Defendant Roberta McKay failed to conduct proper and timely child contact visits with Plaintiff Charla Beaumont Viens.

66.     In August 2002, Defendant Raymond Pickartz received notices that Plaintiff Nichole Haller Nava was talking about being raped at the Garretson home.  Defendant Raymond Pickartz failed to adequately investigate the allegations.

67.     The Garretsons allowed non-foster children to stay in their home as well.  In or around late 2002, a relative of the Garretsons, Chris Jones, impregnated Plaintiff Charla Beaumont Viens in the Garretson home.  At the time, Plaintiff Charla Beaumont Viens was a minor foster child in the custody of the Arkansas DHS.  Plaintiff Charla Beaumont Viens gave birth to H.B., a minor, in September 2003.

68.     In January of 2003, Nicole Haller reported that Garretson had sexually assaulted her in the Garretson home in December of 2002. Defendants Pickartz and Geels were made aware of the report.  Pickartz and Geels again failed to investigate the allegation or check the Child Maltreatment Registry, and the children were left in the Garretson's home.

69.     In 2003, Defendant Debbie Williams obtained actual knowledge that Plaintiff Brandi O'Hara was being sexually assaulted by Garretson in the foster home.  However, no action was taken by Defendant Debbie Williams.  No report was made to the

authorities or the child abuse hotline, and the foster children, including a known sexual abuse victim, were left in the Garretson home.

70.     In October 2003, Lisa Garretson insisted that Plaintiff Charla Beaumont Viens travel with Charlie Garretson during a road trip.  On this road trip, Garretson sexually assaulted Plaintiff Charla Beaumont Viens.

71.     The sexual assaults of Plaintiff Charla Beaumont Viens continued until 2004.

72.     In 2004, the Arkansas DHS finally revoked the foster status of the Garretson family.  However, Garretson's reign of sexual terror continued.  By this time, it was all too obvious that Garretson was sexually abusing children.  Yet no criminal investigation was initiated.

73.     When the Garretsons' foster status was revoked, Defendants Debbie Williams, Roberta McKay, Raymond Pickartz, Carol Geels, and Patsy Chase were employed by Arkansas DHS and assigned to children who were fostered in the Garretson home. Defendants Williams, McKay, Pickartz, Geels, and Chase knew that the foster status was revoked but took no action to investigate, notify, or protect children from continued abuse.

74.     In or around July 2014, Garretson took H.B., the 10-year-old daughter of his former foster child and victim, Plaintiff Charla Beaumont Viens, on a road trip.  During the road trip, Garretson raped H.B. repeatedly.

75.     In or around May 2016, H.B., then 12 years old, reported her abuse to the authorities.

76.     In or around June 2016, Garretson was arrested.

77.    In or around October 2016, Garretson pled guilty to multiple counts of interstate transportation of minors with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423.

78.    On May 31, 2017, Garretson was sentenced to life in prison for his crimes.

79.    Following Garretson's arrest and guilty plea, Plaintiffs began to understand the inappropriate nature of their relations with Garretson.   Further, following Garretson's arrest and guilty plea, Plaintiffs discovered their injuries and the effects of their abuse. Therefore, Plaintiffs' action is timely pursuant to ARK. CODE. ANN. § 16-56-130.

## V.    CAUSES OF ACTION

COUNT 1: 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS

80.    Plaintiffs adopt and incorporate by reference each and every allegation set forth above.

81.    Whether by involuntary removal or voluntary surrender, children come into the Arkansas DHS's foster care system to be protected from harm.

82.    While in the foster care system, foster children remain in the custody of the Arkansas DHS.

83.    Given this special relationship, the Arkansas DHS Defendants have the fundamental duty to ensure that each foster child is in an appropriate placement and confirm that each foster child in the Arkansas DHS's care is safe and healthy.

84.    At all times relevant hereto, it was clearly established that Plaintiffs had fundamental rights to physical safety and to be free from the infliction of unnecessary pain.

85.     Furthermore, at all times relevant hereto, it was clearly established that children in the custody of the Arkansas DHS, including Plaintiffs, had a right to be safe and free from unreasonable risks of harm and a right not to be handed over by state officers to a foster parent whom is known or suspected to be a child abuser.

86.     The above-mentioned rights are guaranteed to Plaintiffs under the Fifth and/or Fourteenth Amendments to the United States Constitution.

87.     On a systemic scale, however, Defendants exhibited a pervasive pattern of indifference to Plaintiffs and their substantive due process rights.

88.     Defendants were aware of or should have been aware of deficiencies within the Arkansas DHS that resulted in the failure to conduct adequate background searches of the foster parents entrusted with the care and custody of foster children.

89.     Defendants, while aware of the deficiencies of the licensing of foster parents, continued to operate under a policy or practice that permitted known sexual offenders to serve as a foster parent to Plaintiffs.

90.     Defendants (and other DHS personnel whose identity is not yet known to Plaintiffs) failed to re-evaluate the Garretson's foster status at least annually or check the Central Child Maltreatment Registry.

91.     Defendants, acting under the color of state law as a foster care worker and/or employee of the Arkansas DHS, violated Plaintiffs' substantive due process rights by *inter alia*:

    a.  Approving Garretson to be a foster parent despite actual knowledge of his history of sexual assault upon children;

b.  Failing to conduct a proper background check of Garretson prior to placing Plaintiffs in their care;

c.  Failing to conduct adequate re-evaluations and registry checks on Garretson;

d.  Failing to thoroughly investigate the fitness of the foster home;

e.  Failing to maintain proper supervision of the foster home;

f.  Deliberately ignoring repeated warnings and signs of abuse;

g.  Deliberately ignoring documented instances finding that Garretson had sexually assaulted minor children;

h.  Failing to promptly investigate allegations of abuse;

i.  Failing to promptly remove Plaintiffs from the Garretson home after actual notice that Plaintiffs were being sexually and/or physically abused;

j.  Failing to ensure that criminal charges were initiated against Garretson in addition to revoking his foster status; and

k.  Allowing the Garretsons to retain the adoptive home status until 2015, and after all Plaintiffs were abused.

92.  Defendants had notice of a pattern of violations of Plaintiffs' constitutional rights and/or of behavior that threatened a violation of Plaintiffs' constitutional rights. Despite this notice, Defendants were deliberately indifferent to and/or tacitly authorized the unconstitutional acts.

93.  Defendants displayed a pattern of omissions revealing deliberate indifference to specific duties imposed for the purpose of safeguarding Plaintiffs from abuse. Indeed, as discussed *infra*, Defendants' actions demonstrate a failure to comply with specific laws and policies designed to protect children, including Plaintiffs.

94.     Furthermore, at all times relevant hereto, Defendants knew that their practices and policies created a substantial risk of harm to children in the care of Arkansas DHS and deliberately failed to choose reasonable alternatives to those practices and policies in deliberate disregard of Plaintiffs' constitutional rights.

95.     Defendants, through their conscious disregard to the rights of Plaintiffs and their deliberate indifference to a known risk, created the danger to which Plaintiffs were exposed.  To wit, Defendants handed Plaintiffs over to a known sexual predator – a behavior that shocks the conscience.

96.     Defendants, through their unconstitutional practices, deliberate indifference and repeated acts of gross negligence, facilitated Garretson's ability to foster and/or adopt Plaintiffs – thereby facilitating his access to his victims.

97.     Defendants, through their unconstitutional practices, deliberate indifference and repeated acts of gross negligence, were a substantial factor in causing Plaintiffs' injuries and damages.

98.     Plaintiffs would not have been placed in Garretson's care, have been permitted to remain in Garretson's care, and/or have been adopted by Garretson but for Defendants' deliberate indifference to their constitutional rights.

Defendant Debbie Williams

99.     Defendant Debbie Williams was the caseworker for Plaintiff Brandi O'Hara.

100.    In 2000, Defendant Debbie Williams placed Plaintiff Brandi O'Hara in the home of a known child sex abuser.  Details of the prior abuse were documented and in the possession of Defendant Debbie Williams.

101.    Defendant Debbie Williams' conduct in 2000 allowed Garretson access to Plaintiff Brandi O'Hara as his child sex abuse victim.

102.    Defendant Debbie Williams failed to conduct proper and timely child contact visits with Plaintiffs Brandi O'Hara, Christopher Wayne Reichard, Amber Lee Reichard Emmett, and Rachel Clark.

103.    Defendant William's failure to respond to abuse reports in 2003 allowed Garretson to continue accessing and abusing his victims.

104.    Defendant Debbie Williams's conduct in 2000-2003 allowed Garretson to continue his role as a foster parent and gain access to all Plaintiff victims that were abused after Defendant Debbie Williams's 2000 conduct.

105.    Therefore, all Plaintiffs assert this cause of action against Defendant Debbie Williams.

Raymond Pickartz

106.    In April 2002 Defendant Raymond Pickartz received notice that Plaintiff Nicole Haller Nava was being physically abused at the Garretson home.    Defendant Pickartz failed to properly respond to the notice.    Instead, he instructed Plaintiff's primary caseworker to have minimal contact with Plaintiff.    In August 2002, Defendant Pickartz received notice that Plaintiff Nicole Haller Nava was talking about being raped in the Garretson home, but failed to adequately respond to the notice of abuse.    In January 2003, Pickartz received notice that Nicole Haller Nava was sexually assaulted by Garretson in December 2002. Defendant Pickartz failed to properly respond to this notice of abuse. During this time Pickartz failed to conduct proper and timely child contact visits.

107. Defendant Pickartz's conduct in 2002 and 2003 allowed Garretson to continue his role as a foster parent and gain access to the following victims that he abused after Defendant Pickartz's 2002 and 2003 conduct:

- Christopher Wayne Reichard
- Amanda Sharp Burkholder
- Nicole Haller Nava
- Brandi O'Hara
- Amber Lee Reichard Emmett
- Charla Beaumont Veins
- HB

108. As a result, Plaintiffs Christopher Wayne Reichard, Amanda Sharp Burkholder, Nicole Haller Nava, Brandi O'Hara, Amber Lee Reichard Emmett, Charla Beaumont Veins, and HB assert this cause of action against Defendant Raymond Pickartz.

<u>Nikkole Hurst</u>

109. In April 2002, Defendant Nikkole Hurst received notice that Plaintiff Nicole Haller Nava was being physically abused at the Garretson house. In May 2002, Defendant Nikkole Hurst received notice that Plaintiff Nicole Haller Nava was being sexually assaulted by another foster child at the Garretson house and received notice from Plaintiff Amber Lee Reichard Emmett that she did not feel safe at the Garretson house.

110. Defendant Nikkole Hurst's conduct in 2002 allowed Garretson to continue his role as a foster parent and gain access to the following victims that he abused after Defendant Hurst's 2002 conduct:

- Christopher Wayne Reichard
- Amanda Sharp Burkholder
- Nicole Haller Nava
- Brandi O'Hara
- Amber Lee Reichard Emmett
- Charla Beaumont Veins
- HB

111.    As a result, Plaintiffs Christopher Wayne Reichard, Amanda Sharp Burkholder, Nicole Haller Nava, Brandi O'Hara, Amber Lee Reichard Emmett, Charla Beaumont Veins, and HB assert this cause of action against Defendant Nikkole Hurst.

Carol Geels

112.    Defendant Carol Geels served as caseworker for Nicole Haller Nava from January 2000 until April 2004.  During this period of time, she failed to conduct proper and timely child contact visits.  In 2003, she received notice of abuse but failed to properly respond.  In 2004, she failed to properly respond to Garretson's foster parent status being revoked.

113.    Defendant Carol Geels' conduct in 2003 and 2004 allowed Garretson to continue his role as a foster parent and gain access to the following victims that he abused after Defendant Geels' improper conduct:

- Christopher Wayne Reichard
- Brandi O'Hara
- Amber Lee Reichard Emmett
- Charla Beaumont Veins
- HB

114.    As a result, Plaintiffs Christopher Wayne Reichard, Brandi O'Hara, Amber Lee Reichard Emmett, Charla Beaumont Veins, and HB assert this cause of action against Defendant Carol Geels.

Patsy Chase

115.    Patsy Chase was a caseworker for Plaintiff Nicole Haller Nava.  During this period of time, she failed to conduct proper and timely child contact visits.  In 2003, she received notice of abuse but failed to properly respond.  In 2004, she failed to properly respond to Garretson's foster parent status being revoked.

116.    Defendant Patsy Chase's conduct in 2003 and 2004 allowed Garretson to continue his role as a foster parent and gain access to the following victims that he abused after Defendant Chase's improper conduct:

- Christopher Wayne Reichard
- Brandi O'Hara
- Amber Lee Reichard Emmett
- Charla Beaumont Veins
- HB

117.    As a result, Plaintiffs Christopher Wayne Reichard, Brandi O'Hara, Amber Lee Reichard Emmett, Charla Beaumont Veins, and HB assert this cause of action against Defendant Patsy Chase.

<u>Roberta McKay</u>

118.    Defendant Roberta McKay was the caseworker for Amanda Sharp Burkholder when she was placed in Garretson home.

119.    Defendant McKay served as Amanda Sharp's caseworker from June 1998 through April 2003 and Charla Beaumont's caseworker from March 2002 through March 2006.

120.    In 1998, Defendant Roberta McKay placed Plaintiff Amanda Sharp Burkholder in the home of a known child sex abuser.  Details of the prior abuse were documented and in the possession of Defendant Roberta McKay.

121.    Defendant Roberta McKay's conduct in 1998 allowed Garretson access to Plaintiff Amanda Sharp Burkholder as his child sex abuse victim.

122.    Defendant Roberta McKay's conduct in 1998 allowed Garretson to continue his role as a foster parent and gain access to all Plaintiff victims that he abused after Defendant McKay's 1998 conduct.

123. In October 1999, Defendant Roberta McKay learned that Garretson was taking minor female Plaintiffs alone with him on overnight trucking tips. Defendant permitted this conduct and did nothing to investigate.

124. Defendant Roberta McKay's conduct in 1999 allowed Garretson to continue his role as a foster parent and gain access to all Plaintiff victims that he abused after Defendant McKay's 1999 conduct.

125. Defendant Roberta McKay's conduct in 1999 allowed Garretson to continue taking foster children outside of the home on overnight truck trips. Garretson abused the following Plaintiffs during these trucking trips after Defendant Roberta McKay's 1999 conduct: Rachel Clark, Christopher Wayne Reichard, Amanda Sharp Burkholder, Charla Beaumont Veins, Ashley Fenton Price, Brandi O'Hara, and H.B,

126. Defendant Roberta McKay was the caseworker assigned to Plaintiff Charla Beaumont in 2004. Defendant McKay permitted Plaintiff Charla Beaumont Viens to travel with Garretson after having notice of Garretson's history of sexual abuse.

127. As a result, all Plaintiffs assert this cause of action against Defendant Roberta McKay.

## VI. DAMAGES

128. Plaintiffs adopt and incorporate by reference each and every allegation set forth above.

129. As a direct and proximate result of Defendants' wrongful actions, Plaintiffs have suffered bodily injury, severe mental anguish, including physical manifestations of mental anguish, humiliation, embarrassment, and confusion. These injuries have in the past and will in the future interfere with Plaintiffs' daily lives, reputation and ability to

earn, enjoy, live, and otherwise carry out their day-to-day responsibilities. Plaintiffs, therefore, claim the following specific items of damage to date:

    a.  Reasonable and necessary medical expenses incurred in the past;

    b.  Reasonable and necessary medical expenses reasonably likely to be incurred in the future;

    c.  Past physical pain and suffering;

    d.  Mental anguish in the past;

    e.  Mental anguish in the future;

    f.  Minimum statutory damages pursuant to 18 U.S.C. § 2255(a);

    g.  Costs, including attorneys' fees and expert witness fees as allowed by 42 U.S.C. § 1988;

    h.  Pre-judgment interest at the highest rate allowed by law; and

    **i.**  Post-judgment interest at the highest rate allowed by law.

## VII.   <u>EXEMPLARY AND PUNITIVE DAMAGES</u>

130.    Plaintiffs adopt and incorporate by reference each and every allegation set forth above.

131.    Defendants' conduct in condemning children to life with a known violent sexual predator involved a reckless and callous indifference to the federally protected rights of Plaintiffs.

132.    In light of the surrounding circumstances, each Defendant knew or should have known that his or her conduct would naturally and probably result in injury or damage. Yet, despite such knowledge, each Defendant proceeded with reckless disregard of the consequence to Plaintiffs.

133.    Therefore, Plaintiffs seek exemplary and punitive damages under the causes of action asserted herein.

## VIII.   <u>JURY DEMAND</u>

134.  Plaintiffs hereby demand a trial by jury.

## IX.    <u>PRAYER</u>

135.    WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, as the law directs, and that upon final hearing thereof, Plaintiffs have and recover judgment over and from Defendants in such amounts as the evidence may show proper at the time of trial, together with pre-judgment and post-judgment interest thereon at the maximum legal rate allowed by law, cost of Court, and for such other and further relief, both general and special, at law or in equity, to which Plaintiffs may show themselves justly entitled.  Plaintiffs specifically pray for exemplary damages against Defendants as allowed by applicable law and as established by the evidence presented at trial.

Respectfully Submitted:

/s/ *D. Neil Smith*
D. Neil Smith, Texas Bar No. 00797450
Ben King, Arkansas Bar No. 2005260

NIX PATTERSON & ROACH, LLP
1845 Woodall Rogers Freeway, Suite 1050
Dallas, Texas 75201
(972) 831-1188 – Telephone
(972) 444-0716 – Facsimile
dneilsmith@me.com
benking@nixlaw.com

MERCY CARTER, LLP
W. David Carter, Arkansas Bar No. 85025
1724 Galleria Oaks Drive
Texarkana, Texas 75503
(903) 794-9419 – Telephone
(903) 794-1268 – Facsimile
wdcarter@texarkanalawyers.com

**<u>Certificate of Service</u>**

      I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's electronic filing system on this the 3rd day of November, 2017.

*/s/ D. Neil Smith_____*