IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RACHEL CLARK; CHRISTOPHER WAYNE REICHARD;
AMANDA SHARP BURKHOLDER;
NICOLE HALLER NAVA; BRANDI O'HARA;
ASHLEY FENTON PRICE;
CHARLA BEAUMONT VIENS, Individually,
and as Next Friend of H.B., a Minor; and
AMBER LEE REICHARD EMMETT                                    PLAINTIFFS

V.                            CASE NO. 2:17-CV-2091

DEBBIE WILLIAMS; RAYMOND PICKARTZ;
NIKKOLE HURST; CAROL GEELS;
PATSY CHASE; and ROBERTA MCKAY                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Pending before the Court are a number of ripe motions. In order to make sense of

why each motion was filed, a brief recitation of the procedural history of this case is in

order. The original complaint (Doc. 1) was filed in this Court on June 5, 2017, against nine

individual defendants. On June 30, 2017, two of the original defendants (Kurt Knickrehm

and Richard Weiss) jointly filed a motion to dismiss for failure to state a claim (Doc. 12).

On July 6, 2017, two other defendants (Carol Geels (spelled "Gillis" in the complaint) and

Roberta McKay (named "Robbie McKay" in the complaint)) jointly filed a motion to dismiss

for failure to state a claim (Doc. 16). The fifth defendant in the case (Lisa Garretson) was

voluntarily dismissed by the plaintiffs on August 15, 2017. *See* Doc. 32. And the

remaining four defendants (Debbie Williams, Dick Pickarts, Nikkole Hurst, and Patty

Chase) were never served.

The Court conducted a hearing on August 24, 2017. The purpose of the hearing

was to entertain oral argument on the two motions to dismiss (Docs. 12, 16), as well as to

set certain case management deadlines. At the time of the hearing, the plaintiffs had already submitted a motion for leave to file an amended complaint (Doc. 21) and had attached the proposed amended complaint (Doc. 21-1) to their motion. The Court reviewed the original complaint, the proposed amended complaint, and the parties' briefing on the motions to dismiss. Then the Court proceeded to hear oral argument on the motions. After argument concluded, the Court stated from the bench its view that both the original and proposed amended complaints were deficient and did not meet the pleading standards articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the Court's opinion, the facts set forth in both the original and proposed amended complaints were largely conclusory in nature and did not state, particularly with regard to the individual-capacity claims filed against all defendants pursuant to 42 U.S.C. § 1983, what specific actions each defendant took with respect to each plaintiff, and what knowledge each defendant had regarding each plaintiff's alleged injuries.     Instead of dismissing the complaint at that juncture, the Court provided the plaintiffs "one more chance" to craft a complaint to state plausible claims. The Court deferred on issuing a formal ruling on the pending motions to dismiss and stated on the record that plaintiffs would be granted the opportunity to conduct some discovery and then submit an amended complaint 60 days later. The Court specifically directed that the amended complaint state facts that were specific to each plaintiff and to each defendant, clearly set forth each cause of action without resorting to a mere formulaic recitation of the elements of the claims, and include facts to support the plaintiffs' tolling argument regarding the pertinent statute of limitations.

2

In a text-only order entered on September 6, 2017, the Court memorialized the directives issued from the bench, ordering the defendants to produce the plaintiffs' foster care and custody files and granting plaintiffs leave to file an amended complaint "that cures the pleading deficiencies identified by the Court" in the hearing. Plaintiffs filed their Amended Complaint (Doc. 71) on the Court's deadline, November 3, 2017. Shortly thereafter, Defendants Debbie Williams, Carol Geels, and Roberta McKay filed a Motion to Dismiss (Doc. 88) for failure to state a claim. Defendant Nikkole Hurst filed a separate Motion to Dismiss (Doc. 90) for failure to effect timely service upon her, or in the alternative, for failure to state a claim. As for the remaining two Defendants, Raymond Pickartz and Patsy Chase, Plaintiffs filed a Motion for Leave to Serve by Publication (Doc. 82), arguing that, despite diligent inquiry, they still had not ascertained the whereabouts of Pickartz and Chase. Plaintiffs followed up with the Court in a Supplement filed December 22, 2017 (Doc. 105), explaining that they had, in fact, recently located and served Defendant Chase but that they still could not find Defendant Pickartz. Plaintiffs therefore filed a Motion (Doc. 106) requesting that the Court retroactively extend the time limit to serve Chase. Chase filed her own Motion to Dismiss (Doc. 111), asserting she had not been served within the deadline, and joining the other Defendants' Motion to Dismiss for failure to state a claim.

Plaintiffs filed Responses (Docs. 102, 103) to both of the motions to dismiss the Amended Complaint on December 12, 2017. Defendants Williams, Hurst, Geels, and McKay filed a Response in Opposition (Doc. 96) to Plaintiffs' motion to serve Pickartz and Chase by publication. Now that all pending motions are ripe, the Court finds, for the reasons set forth below, that Defendants Williams, Geels, and McKay's Motion to Dismiss

(Doc. 88) is **GRANTED**; Defendant Hurst's Motion to Dismiss (Doc. 90) is **GRANTED IN PART AND DENIED IN PART**; Defendant Chase's Motion to Dismiss (Doc. 111) is **GRANTED IN PART AND DENIED IN PART**; and Plaintiffs' Motion for Leave to Serve by Publication (Doc. 82) and Motion to Extend Time for Service of Process (Doc. 106) are both **MOOT**.

## I. BACKGROUND

According to the Amended Complaint (Doc. 71), Arkansas Department of Human Services ("DHS")—which is not a party to this action—received notice in August of 1997 that Clarence Garretson had sexually assaulted two children. DHS conducted an investigation and retrieved law enforcement records describing the abuse and then created a Child Maltreatment Assessment Summary, listing Garretson's sexual abuse of the minors and making a determination that the complaints were "true." *Id.* at 4. DHS then created a child maltreatment report and entered it into a registry. Then, in 1998, for some reason that remains unexplained, DHS approved Garretson to be a foster parent and began placing children in his home.

The Amended Complaint alleges that eight out of the nine Plaintiffs were placed in Garretson's home by DHS in the late 1990s and early 2000s, and there they suffered repeated acts of sexual abuse at his hands. Those eight Plaintiffs are Rachel Clark, Christopher Wayne Reichard, Amanda Sharp Burkholder, Nicole Haller Nava, Brandi O'Hara, Ashley Fenton Price, Charla Beaumont Viens, and Amber Lee Reichard Emmett. All eight of these Plaintiffs are now adults, who at the time the original complaint was filed,

ranged in age from 27 to 33.[1] The only Plaintiff who was a minor when the original complaint was filed is H.B., who is also the daughter of Plaintiff Viens. H.B. was 10 years old and in Viens's custody—not DHS's—when she was brought to Garretson's home in 2014 for a visit. During the visit, Garretson, who was a truck driver at the time, brought H.B. with him on a trip across state lines and raped her. Two years later, in 2016, H.B. told school officials and law enforcement investigators about the rape, and the government brought multiple federal criminal charges against Garretson.

On October 25, 2016, Garretson pleaded guilty in the Western District of Arkansas to five counts of an eleven-count Superseding Indictment. See Plea Agreement, Doc. 33, in Case No. 2:16-CR-20029. Each of the five counts to which Garretson pleaded guilty charged him with interstate transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2433(a).[2] The Plea Agreement states that, with respect to Count One, Garretson raped a minor on or about July 19, 2014, when the minor was traveling with him on a truck trip. Id. at 4. The Plea Agreement then states that after law enforcement became aware of the minor's rape in 2014, they opened an investigation into Garretson's past behavior and discovered that he had also sexually assaulted multiple foster children who had been placed in his care by DHS more than a decade ago. Counts Two, Four, Eight, and Eleven of the Superseding Indictment, to which Garretson also pleaded guilty, describe sexual assaults Garretson committed against four different foster children who had been placed in his care. Count Two describes a foster child's sexual

---

[1] Plaintiff Emmett was not named in the original complaint. She was age 30 at the time she filed her claims in the Amended Complaint.

[2] The Superseding Indictment (Doc. 26) identifies eight separate victims of Garretson's.

assault by Garretson in the summer of 2001, *id.* at 3-5; Count Four describes his sexual assault of a foster child in 2001, 2002, and 2003, *id.* at 5-6; Count Eight describes his sexual assault of a foster child in the summer of 2000, *id.* at 6-7; and Count Eleven describes his sexual assault of a foster child in 2002, *id.* at 7-8.

Garretson was sentenced to life imprisonment on these charges on May 31, 2017. (Doc. 42). The paper Judgment was entered on June 1, 2017 (Doc. 43).[3] During Garretson's sentencing hearing, the Honorable P.K. Holmes, III, Chief Judge of the Western District of Arkansas, made the following observations about the disturbing and tragic circumstances surrounding Garretson's crimes and the ultimate failure of DHS to protect the child victims:

> [W]hat occurred here is that Mr. Garretson, under the guise of being a foster and adoptive parent, with the help of the Department of Human Services, took these young children and he brutally tortured them and sexually assaulted them at a time that they were placed in a home where they were looking for a place of safety. They were placed there because they were in an insecure place to begin with, and when a government agency, for which there was an extreme failure on the part of the Department of Human Services in this particular case, places them in a situation that further victimized them, really makes it, the nature and circumstances of this offense probably the most prolific criminal conduct I've seen when it comes to child exploitation.
>
> While I recognize that the Department of Human Services has a difficult job and I recognize that, you know, they can sometimes be deceived as well, the ultimate or I should say the investigation that the FBI did here into this case shows that this was a case where there was a failure of the system, and it had a devastating effect on the victims in this particular case.

(Doc. 52, pp. 47-48).

---

[3] The Judgment was amended on June 30, 2017 (Doc. 55), but only for the purpose of awarding an amount of restitution to a victim. The Amended Judgment did not alter Garretson's previously imposed life sentence.

The Plaintiffs in the instant case filed their original complaint exactly five days after Garretson's sentencing hearing. In the original complaint, they named as defendants their DHS caseworkers and the current and former directors of DHS. The original complaint attempted—unsuccessfully—to state multiple causes of action against these DHS defendants. The Amended Complaint differs from the original complaint in that it only names the individual caseworkers—and not the current and former directors—as Defendants. Also, the Amended Complaint charges each Defendant under 42 U.S.C. § 1983 with depriving all Plaintiffs of their Fifth and/or Fourteenth Amendment rights to equal protection and substantive due process. Finally, although the Amended Complaint provides several new factual details, including dates when each Plaintiff suffered Garretson's sexual abuse, the pleading is curiously devoid of any references to the Plaintiffs' ages—either at the time the abuse occurred or presently. The adult Plaintiffs' ages are particularly relevant because of the statute of limitations defense that was raised by Defendants in response to both the original complaint and the Amended Complaint.

The Court observes that not only was the statute of limitations defense extensively briefed by the parties at the commencement of the case six months ago, but the Court also discussed the issue on the record during the motion hearing on August 24, 2017, soliciting argument from both sides' counsel. Because the parties were well aware that all but one Plaintiff was close to a decade or more past the age of majority when the original complaint was filed, and the statute of limitations was therefore a hotly contested issue, it was imperative for the Court to be apprised of all Plaintiffs' birth dates before ruling on the statute of limitations issue. The Court therefore directed the parties via text order on January 5, 2018, to file a stipulation under seal, listing each Plaintiff's birth date. The

7

parties complied with the Order, *see* Doc. 110, and the Court correlated the dates listed in the Amended Complaint with the Plaintiffs' ages, using their stipulated birth dates. Following is a summary of the facts pertinent to each Plaintiff, along with relevant dates, and the names of the Defendants whom they maintain caused them injury.

The first Plaintiff listed in the Amended Complaint is Rachel Clark. DHS placed her in Garretson's home in September of 1999, when she was 15 years old. Garretson sexually assaulted her in 2001, when she was 16 or 17 years old. She reached majority in 2002, and she was 33 years old when she filed this case. Her caseworker from 2000 until 2001 was Defendant Debbie Williams.

DHS placed Plaintiff Christopher Wayne Reichard, who is Clark's brother, in Garretson's home in September of 1999, when he was 9 years old. Garretson sexually assaulted him beginning in the summer of 2000, when Reichard was 10 years old, until the summer of 2003, when he was 13 years old. He reached majority in 2008, and he was 27 years old when he filed this case. His caseworker was also Williams.

DHS placed Plaintiff Amanda Sharp Burkholder in Garretson's home in July of 1998, when she was 13 years old. Garretson sexually assaulted her from 2000 to 2002, when she was between the ages of 15 and 17. She reached majority in 2003, and she was 32 years old when she filed this case. Her caseworker was Defendant Roberta McKay.

DHS placed Plaintiff Nicole Haller Nava in Garretson's home in 2001, when she was 11 or 12 years old. Garretson began sexually assaulting her shortly after she entered the home in 2001, and the abuse continued until 2002, when she was 12 or 13 years old. She reached majority in 2007, and she was 27 when she first filed this case. Her caseworkers were Defendants Nikkole Hurst, Carol Geels, and Patsy Chase. Defendant Raymond

Pickartz was Hurst's, Geels's, and Chase's supervisor at the time. The Amended Complaint contends that Nava reported to her caseworkers in 2002 that she was being both physically and sexually abused in the Garretson home, and that the caseworkers therefore "obtained actual knowledge that Plaintiff Nicole Haller Nava was being sexually assaulted by Garretson in her foster home." (Doc. 71, p. 9). The Amended Complaint goes on to assert that Hurst, Geels, Chase, and Pickartz made no formal report of the abuse, but that Hurst conducted some sort of investigation into Nava's claims and was later discouraged by Pickartz from having further contact with Nava. The Amended Complaint also states that Pickartz "received notices"—although it is not clear from whom—"that Plaintiff Nichole [sic] Haller Nava was talking about being raped in the Garretson home." *Id.* at 10. In January of 2003, Nava allegedly "reported that Garretson had sexually assaulted her in the Garretson home in December of 2002," *id.*, but the Amended Complaint fails to mention the name of the person to whom the abuse was reported. Instead, it claims only that Pickartz and Geels "were made aware of the report." *Id.*

DHS placed Plaintiff Brandi O'Hara in Garretson's home in January of 2000, when she was 12 years old. Garretson sexually assaulted her on a bi-weekly basis for a period of 5 years, beginning in the summer of 2000, when she was age 13, and continuing until she was 17 or 18. She reached majority in 2005, and she was 30 years old when she filed this case. Williams was her caseworker.

DHS placed Plaintiff Ashley Fenton Price in Garretson's home in January of 2000, when she was 13 years old. Garretson sexually assaulted her over a period of two months, during the winter of 2000. She reached majority in 2004, and she was 30 years old when the case was originally filed. The Amended Complaint is silent as to the identity of Price's

9

DHS caseworker, though Price appears to blame McKay for her injuries. According to the Amended Complaint, McKay allegedly learned in 1999 "that Garretson was taking minor female Plaintiffs alone with him on overnight trucking trips" but did not investigate this conduct. (Doc. 71, p. 20). Plaintiffs therefore blame McKay for all incidents of sexual abuse Garretson committed against all Plaintiffs—including Price—who were placed in Garretson's home after 1999.

DHS placed Plaintiff Charla Beaumont Viens in Garretson's home in May of 2002 when she was 15 years old. Garretson sexually assaulted her from October 2003 until sometime in 2004, when she was 17 years old. She reached majority in 2004, and she was 30 years old when she first filed this case. McKay was her caseworker. Viens was impregnated in late 2002 by a relative of Garretson's, while she was in Garretson's care, and Viens subsequently gave birth to Plaintiff H.B. in 2003. Viens continued to live with Garretson after H.B.'s birth.[4]

DHS placed Plaintiff Amber Lee Reichard Emmett in Garretson's home in September of 1999, when she was 12 years old. Emmett was placed in the home along with her sister, Clark, and her brother, Reichard. Garretson sexually assaulted Emmett beginning in 2000 and continuing until 2004, when she was 16 or 17 years old. She reached majority in 2005, and she was 30 years old when she became a party to this case. Williams was her DHS caseworker, but the Amended Complaint also claims that Emmett had some contact with Hurst in 2002, when Emmett reported to her that she did not feel safe at the Garretson home.

---

[4] Garretson's foster status was officially revoked by DHS sometime in 2004.

The last Plaintiff, H.B., is currently a minor. She was raped by Garretson at age 10, in July of 2014, when her mother, Viens, brought her to Garretson for a visit. H.B. was not in DHS custody at the time Garretson raped her; rather, she was in her mother's custody, and it was her mother who placed her in Garretson's care immediately prior to the time she was raped. H.B. reported the rape to authorities in May of 2016, when she was 12 years old. She was 13 when the original complaint was filed.

Below, the Court will first consider whether the Defendants who have appeared in this matter to date have been properly served. Next, the Court will turn to whether the adult Plaintiffs—Clark, Reichard, Burkholder, Nava, Price, O'Hara, Viens, and Emmett—pleaded sufficient facts to toll the applicable statute of limitations on their Section 1983 claims. Finally, the Court will examine minor Plaintiff H.B.'s claims and determine whether the facts underlying those claims are sufficient to withstand dismissal under Rule 12(b)(6).

## II. LEGAL STANDARD

### A. Rule 12(b)(5) Dismissal for Insufficient Service

According to Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant[.]" Fed. R. Civ. P. 4(m). However, a court must extend the time for service "if the plaintiff shows good cause for the failure [to serve within 90 days]." Id.

According to the Eighth Circuit, "[a] showing of good cause requires at least 'excusable neglect'—good faith and some reasonable basis for noncompliance with the

rules." *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996). Although "good cause" is not specifically defined in Rule 4(m), it may likely be found "when [1] the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, [2] the defendant has evaded service of the process or engaged in misleading conduct, [3] the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or [4] the plaintiff is proceeding pro se or in forma pauperis." *Kurka v. Iowa Cnty., Iowa*, 628 F.3d 953, 957 (8th Cir. 2010) (citing 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 at 342 (3d ed. 2002)). Absent a good-faith justification for extending the 90-day deadline, the court may dismiss a case under Rule 12(b)(5) for "insufficient service of process." Fed. R. Civ. P. 12(b)(5).

### B. Rule 12(b)(6) Dismissal for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "a short and plain statement of the claim that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of a complaint's factual allegations as true, and construe them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at

12

570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

When a defendant asserts that a claim should be dismissed due to the expiration of the statute of limitations, the court may take up that matter at the motion-to-dismiss stage in order to determine whether the case should survive dismissal. *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004). "Under Arkansas law, once it is clear from the face of the complaint that an action is barred by an applicable statute of limitations, the burden shifts to the plaintiff to prove that the limitation period was in fact tolled." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). The federal statute under which Plaintiffs are all asserting their claims is 42 U.S.C. § 1983, and it does not contain a statute of limitations. However, "[w]hen Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266–67 (1985), *superseded by statute on other grounds* by 28 U.S.C. § 1658(a) *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–81 (2004).

The Supreme Court has held that if "state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250 (1989) (affirming Court of Appeals for the Second Circuit's application of New York's general personal-injury statute of limitations in a § 1983 action, even though New York had multiple statutes of limitations that corresponded to different intentional torts). Here, the general statute of limitations period for personal injury actions that have accrued in Arkansas is three years. *See Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992).

## III. DISCUSSION

### A. Defendants Hurst's and Chase's Motions to Dismiss under Rule 12(b)(5)

Hurst filed a Motion to Dismiss (Doc. 90) on November 17, 2017, asserting that she was not served with process within the 90-day deadline. The deadline was September 3, 2017, and she was served 17 days later on September 20, 2017. Attached to the Motion is Hurst's declaration, in which she claims she is "close personal friends with [Plaintiff] Nicole Haller Nava," and that "[b]etween June 5 and September 20, 2017, Nicole Haller Nava knew where I was living." (Doc. 90-1). In response, Plaintiffs have presented Nava's declaration, which directly contradicts Hurst's. Nava maintains that she did not know Hurst's correct address until she received a Facebook message from her on September 13, 2017. (Doc. 102-2, p. 2). Plaintiffs have also attached a screenshot of the Facebook exchange, in which Hurst tells Nava, "Hey Nikki..will u give your attorney my new address?

They brought me papers yeaterday [sic] at my old house..I wasnt there...my new address is 1322 north coghill drive apartment 104. Fayetteville 72704." (Doc. 102-1, p. 24).

Plaintiffs' counsel, W. David Carter, also filed an affidavit, attesting to: (1) the process server's lack of diligence in informing Carter that repeated attempts to serve Hurst at home had failed due to an incorrect address; (2) Carter's attempt to have Hurst served at her work address instead; (3) Carter's notification by the process server that Hurst was no longer employed at that address; (4) Carter's receipt on August 31, 2017, from Defendants' counsel—after the Court directed Defendants to provide the address to Plaintiffs—Hurst's "last known address," which also proved to be inaccurate; and (5) Carter's September 13, 2017 communication with Nava, in which she informed him that she had just learned Hurst's correct address that very day, via Facebook.

Considering the above evidence, the Court is persuaded that Plaintiffs have demonstrated good cause for their failure to serve Hurst within the 90-day deadline. Hurst's Motion to Dismiss pursuant to Rule 12(b)(5) will be denied, and the Court will consider her Motion to Dismiss under Rule 12(b)(6) in the discussion below.

Turning now to Chase's Motion to Dismiss (Doc. 111), which was filed on January 8, 2018, Plaintiffs have yet to file a formal response, but they have explained their reasons for Chase's late service in the context of their Motion to Extend Time for Service of Process (Doc. 106). Attorney Carter has once again submitted an affidavit to the Court (Doc. 106-1) outlining Plaintiffs' various attempts to serve Chase prior to the Court's case management hearing in August. After the hearing, at the Court's direction, Carter received from Defendants Chase's "last known address"—which was the same erroneous address at which Carter had previously attempted service. Carter explains that he "secured the

service of a private investigator" and "also hired two separate process servers" but remained unsuccessful in finding Chase's correct address. *Id.* at 5. He eventually found a possible new address for Chase on December 12, 2017, and successfully served her at that address on December 19. *Id.* at 6. His affidavit does not go into detail about how he located the correct address.

Having considered Chase's Motion and Carter's affidavit, the Court finds, first, that Plaintiffs' justifications for serving Chase after the 90-day deadline are not as clear or well-explained as the ones they cited with respect to Hurst. Nonetheless, the Court finds that Carter's affidavit is detailed enough to establish Plaintiffs' diligence in attempting to serve Chase by the deadline. For all of these reasons, good cause exists to excuse Plaintiffs' delay in serving Chase, and her Motion to Dismiss on the basis of Rule 12(b)(5) will be denied. Chase's request for dismissal under Rule 12(b)(6) will be taken up below.

### B. Dismissal under Rule 12(b)(6)

#### 1. Expiration of Statute of Limitations as to All Adult Plaintiffs

The Court shares Chief Judge Holmes's consternation and disgust over the singularly brutal treatment that the now-adult Plaintiffs received when they were placed in Garretson's home by DHS. Clearly, the State's Agency failed these individuals, and the Plaintiffs' caseworkers who had knowledge of their mistreatment or failed to investigate further must live with that fact. With all that said, however, when the statute of limitations expires on a victim's civil claim—even if that claim is meritorious—there is, generally speaking, no recourse to be had. Such is the case here.

The Court has afforded adult Plaintiffs Clark, Reichard, Burkholder, Nava, Price, O'Hara, Viens, and Emmett three separate opportunities to state facts that could be construed to toll the statute of limitations that clearly applies to their Section 1983 claims. Despite these several attempts, they have been unable to state *any* facts that would toll the statute. It is for this reason that their claims will be dismissed.

As previously stated, Arkansas' three-year statute of limitations for general personal injuries governs all Section 1983 claims that accrue in Arkansas. *Ketchum*, 974 F.2d at 82. The United States Supreme Court has made clear that both the length of a given limitations period and "closely related questions of tolling and application" are to be determined by state law in Section 1983 actions, since Section 1983 does not have its own specified statute of limitations. Interpreting its earlier decision in *Wilson v. Garcia*, the Supreme Court in *Owens v. Okure* explained that the reason why a district court hearing a Section 1983 claim should choose a state's general personal-injury statute of limitations to govern the claim is that a "'simple, broad characterization' of all § 1983 actions" is necessary to avoid "chaos and uncertainty." *Owens*, 488 U.S. 235, 242-43 (1989) (quoting *Wilson*, 471 U.S. 261, 269 (1985)). Bearing in mind the need to create an easy-to-follow rule, the Court announced definitively that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* at 249-50.

In the case at bar, Plaintiffs Clark, Reichard, Burkholder, Nava, Price, O'Hara, Viens, and Emmett agree that they filed their claims more than three years after they reached the age of majority. *Cf.* Ark. Code Ann. § 9-25-101 (providing that the age of

17

majority in Arkansas is 18). In fact they all filed their claims more than nine years after they reached majority. Plaintiffs argue, however, that their claims should be tolled because of an Arkansas statute that provides a special tolling exception for victims of child sexual abuse. Ark. Code Ann. § 16-56-130(a) states that if a civil action is "based on sexual abuse which occurred when the injured person was a minor but is not discovered until after the injured person reaches the age of majority," the claim may be brought "within three (3) years from the time of discovery of the sexual abuse by the injured party."

The Court finds that permitting Plaintiffs to use Ark. Code Ann. § 16-56-130 to extend the general personal-injury limitations period on Section 1983 claims past the ordinary three-year filing deadline would thwart the Supreme Court's aim of providing potential litigants the ability to "readily ascertain, with little risk of confusion or unpredictability, the applicable limitations period in advance of filing a § 1983 action." *Owens*, 488 U.S. at 248. Although the Eighth Circuit has not dealt with this precise issue, the Tenth Circuit in *Varnell v. Dora Consolidated School District* soundly rejected a plaintiff's argument that the three-year statute of limitations on her Section 1983 claims should be tolled by a New Mexico child sexual abuse statute. 756 F.3d 1208, 1212 (10th Cir. 2014). Citing to the Supreme Court's established precedent in *Wilson* and *Owens*, the *Varnell* Court found that "state tolling provisions adopted for actions under § 1983 should not depend on the 'particular facts or the precise legal theory of the claim.'" *Varnell*, 756 F.3d at 1212-13 (quoting *Wilson*, 471 U.S. at 274). Instead, "[o]nly generally applicable tolling provisions—such as those based on minority, incapacity, and equitable grounds—should be incorporated for use under § 1983." *Id.* at 1213.

18

The Fifth Circuit held similarly, holding in *King-White v. Humble Independent School District* that "Plaintiffs' argument that [Texas's] specific limitations period for sexual assault claims should apply over the general two-year period . . . is foreclosed by *Wilson* and *Owens*," since "the Court in *Owens* clearly intended for the 'general provision[s]' to govern all § 1983 claims regardless of whether any of the 'specific exceptions' could arguably apply under the particular facts of the case." *King-White*, 803 F.3d 754, 761 (5th Cir. 2015) (citing *Owens*, 488 U.S. at 246). When adult sexual abuse survivors attempt "to analogize their federal claims to state claims involving sexual assault and apply a limitations period that is different from the 'general' period," they ask the presiding court "to employ precisely the practice that the Supreme Court rejected in *Wilson* and *Owens*." *Id.*

This Court adopts the reasoning of the Tenth and Fifth Circuits and rejects Plaintiffs' argument that Arkansas' child sexual abuse law, codified at Ark. Code Ann. § 16-56-130, tolls the well-established three-year statute of limitations period applicable to Section 1983 claims. As to whether Plaintiffs have made a plausible equitable tolling argument on some other grounds, the Court finds they have not. The Amended Complaint contains no facts that would reasonably justify tolling the adult Plaintiffs' claims, particularly for the extreme length of time at issue. The Supreme Court has made clear that plaintiffs are entitled to equitable tolling when they can show they have been pursuing their rights diligently, and some extraordinary circumstance stood in their way. *Holland v. Florida*, 560 U.S. 631, 649 (2010).

According to the Amended Complaint, all the adult Plaintiffs were sexually abused by Garretson when they were between the ages of approximately 10 and 17 years old.

19

There are no facts before the Court that would indicate that these Plaintiffs suffered from a mental condition or disease that would have caused their incapacity as adults, and thus, their inability to timely file these claims. There are no facts to indicate that any of them suffered from a mental condition that caused them to suppress the memories of the abuse until they were older. Without elaboration, the Amended Complaint makes the blanket, conclusory claim that *all* adult Plaintiffs simultaneously "began to understand the inappropriate nature of their relations with Garretson" after his arrest and guilty plea, and therefore were not in a position to file their civil claims until then. (Doc. 71, p. 12). This assertion is insufficient to toll the limitations period for a number of reasons.

First, the Amended Complaint contains facts that indicate that at least some of the adult Plaintiffs, particularly Nava and Emmett, told their caseworkers that they were being abused *at the time the abuse was occurring*. The Amended Complaint also states that Garretson's foster-parent status was revoked in 2004, but is silent as to the adult Plaintiffs' knowledge of that fact and their reaction to it. It is implausible that the civil claims of all adult Plaintiffs collectively accrued at the moment that Garretson was arrested—or the moment that he pleaded guilty. Furthermore, it is plain to the Court that Plaintiffs have made no effort to add factual color to their tolling argument because the argument is without merit, and no further facts exist.

In comparing the original complaint (Doc. 1), the proposed amended complaint (Doc. 21-1), and the Amended Complaint (Doc. 71), all three pleadings are devoid of facts that would explain why the adult Plaintiffs filed their claims out of time. The Court surmises that they did so due to their lack of lack of knowledge of their legal right to sue—which is not a basis for tolling the statute of limitations. The adult Plaintiffs have not plausibly

20

claimed a lack of knowledge of their *injuries*, and under federal law, the limitations period begins when the plaintiff "discovers, or with due diligence should have discovered, the *injury* that is the basis of the litigation." *Comcast of Ill. X. v. Multi–Vision Elecs., Inc.*, 491 F.3d 938, 944 (8th Cir. 2007) (emphasis added) (citing *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998)).

Therefore, the adult Plaintiffs' claims will be dismissed with prejudice, as the Court believes that affording them yet another opportunity to plead further with respect to the statute of limitations will be futile. Because dismissal is well justified on statute of limitations grounds, the Court declines to reach the other issues that were raised in Defendants' Motion to Dismiss (Doc. 88).

## 2. Sufficiency of Minor Plaintiff H.B.'s Claims

H.B.'s claims are not time-barred, but they are insufficient to survive *Twombly* and *Iqbal* scrutiny and will therefore be dismissed without prejudice. H.B. was not in DHS's custody at the time Garretson raped her. H.B.'s claims against Defendants, all of whom are current and former DHS caseworkers, hinge on her contention that her rape would not have occurred had the Defendants been more vigilant in the 1990s and referred Garretson to law enforcement for criminal prosecution—or else revoked his foster-parent status sooner than 2004.

Although the Court is very sympathetic to H.B.'s—and indeed all Plaintiffs'—feelings of anger toward DHS, H.B. has stated no facts that would plausibly show that any particular action taken by one of more of the Defendants would have prevented her injuries, or conversely, that her injuries were plausibly caused by the inaction of one or more of the

Defendants. *See Zutz v. Nelson*, 601 F.3d 842, 852 (8th Cir. 2010) (dismissing Section 1983 claim for failure "to plausibly allege a causal connection between the [defendants'] conduct and any constitutional deprivation"). Her claims will therefore be dismissed.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED THAT** the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 88), filed by Defendants Debbie Williams, Carol Geels, and Roberta McKay, and joined by Defendants Nikkole Hurst and Patsy Chase, is **GRANTED** as follows: (1) the claims of Plaintiffs Rachel Clark, Christopher Wayne Reichard, Amanda Sharp Burkholder, Nicole Haller Nava, Brandi O'Hara, Ashley Fenton Price, Charla Beaumont Viens, and Amber Lee Reichard Emmett are **DISMISSED WITH PREJUDICE** due to the expiration of the statute of limitations and the Court's finding that providing these Plaintiffs with a further opportunity to plead their claims would be futile; and (2) Plaintiff H.B.'s claims are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

**IT IS FURTHER ORDERED** that Defendant Hurst's Motion to Dismiss (Doc. 90) is **GRANTED IN PART AND DENIED IN PART**, in that her request for dismissal under Rule 12(b)(6) is **GRANTED**, but her request for dismissal for failure of service under Rule 12(b)(5) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Chase's Motion to Dismiss (Doc. 111) is **GRANTED IN PART AND DENIED IN PART**, in that her request for dismissal under Rule 12(b)(6) is **GRANTED**, but her request for dismissal for failure of service under Rule 12(b)(5) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Serve by Publication (Doc. 82) and Motion to Extend Time for Service of Process (Doc. 106) are both **MOOT**, as this case is dismissed. Judgment will enter concurrently with this Order.

**IT IS SO ORDERED** on this **16th** day of January, 2018.

 

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE